Case number 21-2977, Kevin Lindke v. James Freed. Argument is not to exceed 15 minutes for the appellant, 5 minutes for the amicus, and 20 minutes for the appellee. Mr. Ellison, you may proceed for the appellant. Yes, thank you. Good afternoon. Philip Ellison, appearing on behalf of the appellant Kevin Lindke. I'm reserving 3 minutes for rebuttal. That sounds great. Thanks, Mr. Ellison. You may proceed. Thank you. Your Honors, this case comes to you as a First Amendment case that has two very distinct parts. The first part is where Mr. Lindke has alleged that James Freed, when operating a social media account, which the social media account was registered to the city, registered to a city email address, and had all the, what we call the trappings of the city, was barred from accessing that account at a particular point when Mr. Freed didn't like the negative comments that were said about him. The Michigan, or excuse me, the U.S. Supreme Court, as the tail end of its decision, pointed out to this court that whether Freed had engaged in state action with respect to any post, or which link you wish to comment, is the question that needs to be answered for the banning portion of this case. And of course, the parties have, I think, have briefed, at least our side, Mr. Ellison, so I think of it a little different, and you should explain to me why I'm wrong. I think we have to decide first whether he had the authority, according to the Supreme Court. That's whether he had the actual. So we said it was actual or apparent. They said, no, no apparent authority doesn't count. It's only actual. And then they defined actual authority either by written law, meaning statute, ordinance, or regulation, or custom and practice. And so isn't that the preliminary question? Either us or the district court has to decide, and then shouldn't we try and figure out how to decide that question before we get to, it seems like the second question is both easier from a legal perspective and harder from a factual perspective. In other words, maybe not harder, but you may need more discovery, as you point out in your brief. But I guess I'm more focused on the first question. Well, I think the two are interrelated, and here's why. Because the question, the allegation of each prong of this banning and the actual deletion of the comments have different lenses by which this court has to review that question of whether there is state action. So for example, for the banning, if there's any post in the account whatsoever of state action, then there would be a violation of the First Amendment by banning them specifically. I guess I think of it, let me, you should again correct me, but I think, and then the way I think of state action is the first question is, is he doing that? And the second question, right? But the first question is, does the authority, is he cloaked with the authority by some written law or some custom? And the second question is, was he exercising that authority when he posted? And I agree with you. If he banned, if he's banned, which your client was, then one post is enough where he was exercising that authority. But it seems to me the harder question, the one you keep skipping over, is how to figure out if he had the authority. Because as of now, you haven't pointed us, and you very well could have. You don't need discovery to point us to a written law, ordinance, or regulation. So it seems to fall on custom or usage. And so the way that's defined in the case law is a persistent practice that are permanent and well settled. How do we figure that out? And the amicus took a stab at this, just to give you a clue, at pages 22 and 23, and did a pretty good job. I was a slightly a bit envious of that briefing. I will say that, and I will tip my hat to them in doing that. But the same token is, the only reason why I take the time to address those is because when pressed against, once you kind of view the state action question through those lenses of those particular actions. Taking this court's cue, I would point this court to two different things. And in preparation for this oral argument, there's two places, and you've correctly identified where we could look. We either look to the written law itself, or we look to custom and practice. In preparing for this, there is a spot where I think this court could address a specific delegation of authority by code. And that's section 20-13 of the city code, which provides that in a case of an emergency, which COVID has been regularly referenced as an emergency basis at this particular time through the lens this case was unfolding, it says, quote, the city manager will provide direction for media releases. Now, the question would become is under 20-13, what does that mean, media releases? Does that mean social media releases? Or does that mean communications with the press? That's not really clear. Is that section cited in your brief? That section is not cited in my brief. That is something I prepared. I found that as part of preparation here today when looking up the city's citation to 20-15. Because in response, that's going to tell you why it's not in your reply brief item. It is not. It is not. But the important part, the reason why I addressed this is because the city took the position that it's the normal practice for the public safety director to address media releases. And as we pointed out time and time again, we cited you in our reply brief, the reply supplemental brief, that, for example, the city just had an emergency with a water main break. It wasn't the director of public safety who responded or issued the public statement or media or went online. It was actually city manager. And as the social media posts established during this entire time, it was him, I think, on behalf of the city saying, these are the things that we are doing. Here are the things that I am the city manager doing. And I think one of the things that the district court gave, I think, short change to is this notion of the language that was used in those posts. It wasn't as, look what I'm doing at work during the day. It's look what we are doing, what the city is doing. We are collectively doing. Now, I know those things. Can I ask you, so most of these posts are kind of like reposts or retweets, if we're talking about different media, right? There are decisions that were made by other actors in the city government. And then the city manager announced them on his social media account. But they weren't, most of these were not really sort of his decision or his actions, his official action, right? I thought there was another follow-up to that. So no, so yes, some of them were, but not all of them. And that's where I think the Supreme Court came back kind of chastising us as the litigants saying, it's not an all or nothing proposition. We don't look to the whole account. But so for the ones that, the ones that were, you know, if I, if Judge Lepar writes a decision and it's published on the Sixth Circuit website, and then I put it on my Facebook page or something saying, here's a great decision from the Sixth Circuit, or a not very good decision. Isn't that just essentially what happened here? I didn't write that decision. I didn't have authority to post Judge Lepar's decision, but I sort of repopulated it in my social media. But that doesn't feel like official action or state action on my part. I don't necessarily disagree, but if we change the analysis a little bit and say the Sixth Circuit has now announced a new rule and Judge Rayler, Judge Rayler goes on social media and says, I think this is a bad policy that the Sixth Circuit is now adopting, right? And repost what the clerk had posted online, for example, that changes it from being simply being a repost to being something more in tune to what you're responding to in your role as a, as a federal judge. Are there evidence of those? Are there evidence of him criticizing as opposed to just sort of, you know, reposting things, decisions that were made by others? I don't mean to tie into be critical in this being is the, is the deciding factor, but simply being things that are tied to his specific position and things that he has the authority over. For example, the great one would be the issuance of the administrative directives that he issued. In many of those cases, he issued them and shortly thereafter before they were ever, and I think Discovery will pan this out even in more detail than we have now, is we'll pan out the fact that these things were posted, not reposted from another source, but simply directly posted in this respect. And that gets me to ties me into where I kind of started this from. And, and I, and I guess I'm going to push back a little bit. It feels like you're speaking in generalities quite a bit. You don't want to talk about specific posts. Cause I don't think there are that many that I saw that are anything more than official action made somewhere else that were then sort of reposted. Well, but if there's even, but that gets me back to where I'm starting. Okay. If there's one, but what is the one? What's the, what's the one? The administrate, I can, I can, I've cited them all and I've given screenshots of them in my brief as for example, at page ID two, uh, 12, 20, 12, 22, these are the administrative directives. Those are the most poignant examples of those. Now I kind of think. Those directives were issued other, the directives were issued separately, right? They were issued. They were issued, they were issued that morning, but there was, they were publicly distributed for the first time on social media that way. Because even, even looking at a basic timing of when these things were issued compared to when they were posted on social media, there was no other time for them to have been distributed or otherwise made publicly available elsewhere. If they were separately made publicly available eventually by the city. I don't know that. And we don't, the record doesn't reflect that. Well, you've already had this. Why do we, you've already had discovery. Well, why do we have to remand this case? Because the reason you need to remand this case is because the lens by which we reviewed and argued this case, both this court, the district court and the litigants is we took a more of appearance and function tests borrowing from the other circuits, which was the only test that was available at that time. And well, the language, the language is custom and usage. That was the language. Then it's a language now. Well, but it was our basis that essentially our argument was, is one post makes it a state action. And of course this court said no. And the Supreme court has come back and said, maybe, right? Because they've said, we have to look on this on a post by post basis, as opposed to just making these large generalities as to the count itself, because that's what this court did. And that's what the district court did. And frankly, that's what the litigants did. And I guess, I guess you also had a Monell claim and the Monell claim would have given you a chance to develop custom and usage practices in the, in the city government more broadly. And I just doesn't feel like you did that. Well, the problem is though, is that the district court never ruled on that decision. I mean, that was not something that was raised in that respect. And if he had ruled on it. So we could remand without discovery. We could remand back to the district court then without discovery to rule on those issues. Well, what I'm asking this court to do is because the U.S. Supreme court changed the yard, the, what I call the constitutional yardstick on this state action in this specific instance, we need more targeted discovery. And that decision on the scope of discovery is more appropriate to be made by the district court judge, certainly than this court would be. And if I'm, if I'm exceeding my role in some fashion in the front, before the district court, sister council is more than able to call, call a foul and take it to the judge to ask for a protective order in that respect. So again, you know, part of this is, and again, I go back to where I started from on this is that the problem is exists is that the test changed. And when the test changed, did it change completely from one end of the spectrum to the another? I would probably not, but it did change from the one end of the spectrum to the middle of the spectrum. And as such, we need to be able to address those specifically because the allegations from the, from Mr. Freed's side is that I didn't do these things are these things are the way I'm characterizing these things are a mischaracterization, which we never had to discover before under the appearance and function tests that we are all operating on at that particular time. So I'm asking this court to give me that opportunity to fine tune. And if I come up short on remand that way, then so be it, but I should be given that opportunity with a new test. As I've said, and I cite a Taylor versus city of Saginaw, which is of course, one of my cases is the district court is the court of first instance. This court isn't, this court is a court of review. I see that I'm out of time. Thank you. Thank you, Judge Gilman. Did you have any questions before I move to the next council? Just curious. I mean, why you, you are requesting a remand. So what you think there's further factual development required at the district court level? I do because the Supreme court changed the test from being looking at the entirety of the account to looking at it on a per post basis, at least as to the state action of deleting the comments, part of the test, which this court took, as it said in its decision, this is a, we look at the whole account, which arguably is the part that got overruled directly by the Supreme court, the different yardstick by which to measure these things. And the district court used that same original yardstick too, I would argue. Okay. Thank you counsel. Thank you. Ms. Fallow, am I pronouncing that correctly? Yes. Excuse me. Yes, your honor. Thank you for your brief and thank you for participating. You may proceed. Thank you so much. Good afternoon. And may it please the court, Katie Fallow on behalf of Amici. And I wanted to start by thanking the court for allowing us to participate in the argument. Amici are free speech organizations that are interested in ensuring that government operated social media accounts continue to serve. Ms. Fallow, I'm sorry to interrupt you, but you only have five minutes. I think valuable things to say. So I would cut to the chase. And can I ask you about on pages 22 and 23, I just want to understand two of your points. You talk about custom and usage. And I find that to be the hardest thing. In other words, coming up with a test or something a district court could employ. And you talk about evidence from freed and past city managers about the scope of their job responsibilities. Is that directly linked to the Supreme Court opinion when they were saying, well, if they can talk about health, mental health or the restaurant example, for example, is that what you're talking about there? Does this speaking on this fit within their job responsibilities versus what Judge Raebler was pointing out, just reposting something someone else did? Yeah, well, I think that and as we said in our brief, we do agree that remand would be appropriate here, in particular on the question, this threshold question, as your honor said, of authority to speak. The Supreme Court emphasized that it needs to be the authority to speak generally, not the authority to speak via social media. And so it needs to be right. I'm sorry to interrupt you. It needs to be the authority to speak about the subject matter. In other words, if I have a janitor that works in the city and then he reposts the COVID directive, he's not acting pursuant to his job, basically. It's not state action at that point. So that's what I'm trying to get at with your words, job responsibility. I just want to understand that. I think what we were trying to convey is that the Supreme Court said you can locate authority to speak on behalf of the government, either in written law or through custom or usage. And it gave as an example, you know, the director of the state high transportation authority that would have a presumed authority to speak on because they're at such a high level to speak on matters related to the highways. You probably you wouldn't have a presumed authority to speak on behalf of the state on matters related to health care if you're the transportation. Right. So that's what I figured. And then the other one I wanted to ask about, about whether the official website links to social media. But a lot of these websites link to a lot of extraneous things. So how is that evidence of custom or usage? When you were talking about these in your brief, just to remind you, you were talking about customer usage and how to figure it out. Yeah, I mean, I think you would look, I mean, the Supreme Court suggests that you would look at the practice, both of Freed, but maybe his predecessors and to look at what is the city manager's role in the city of Port Huron and does Freed or his predecessors, were they given the authority to speak on behalf of the city through example, speaking to members of the press, holding press conferences? What is his job description say? What is his employment contract say? Those don't appear to be things that are in the record right now. And our view is that the Supreme Court made it clear that you were looking at, and you had to have this threshold question of, do you have the authority to speak on behalf of the government? And what's the scope of that authority? And that wasn't clear when the case was filed and being litigated. And so to really answer the question of just do they have the authority and are they exercising that authority, you need to determine the scope of the authority in the first place. One final question for me, unless Judge Radler or Judge Gilman want to jump in. Go ahead. Okay. My final question is, to be a customer usage, it has to be a persistent practice that is permanent and well settled. How does a district judge or a court of appeals figure out if it amounts to that? In other words, is it, I know it when I see it, or is it, what is, I mean, what does that mean? Is it so entrenched that it's just a regular job duty of these people? Well, I think, you know, there's no strict temporal requirement of how longstanding the practice has to be. I agree that it's a fact-intensive question. I think that this court can look at things like job descriptions and a practice that amounts to something that's beyond just random or one-off. And I think the court could also look to its, you know, precedence in the area of custom and usage as applied in the municipal liability context. And so, I think you just need to look at, it's a very fact-intensive inquiry and look at things like, does the city manager frequently exercise the, or, you know, speak on behalf of the city on matters related to construction on main site, what they're doing in reaction to COVID, et cetera. Judge Radler or Judge Gilman, questions? Nothing further. Judge Radler. Thank you very much, Ms. Fellow. It was very helpful and we appreciate your brief as well. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the court, Victoria Ferris appearing on behalf of James Freed. I'll start with the custom too, since that's what we're talking about right now. And I think the first thing I want to highlight is that custom has been in Section 1983, the entirety of this litigation, and it was relevant then. Kevin Linkey could have taken that position and argued custom. He chose not to. And I think when we're thinking about what custom is and how long that, you know, if just one person could do that, if it has to be longstanding, the Supreme Court was very clear that it has to be, and Justice Barrett used the phrase, something that past city managers had done. And when we look at the addicts' decision, which again was decided in 1973 and was fully available to plaintiff, that also was something, I think the words they used was, a practice that carries the force of law. So it's not some one-off. Justice Barrett was also very clear that Freed can't conjure up some authority on his own. There's simply no evidence of custom, and they could have done additional discovery to find that out had they wanted to, but they didn't. And then looking at the first problem- they talked about, as Amicus pointed out, authority to speak generally, and we were more focused on authority to speak on social media and, or we were looking at the page as a whole, and they were saying, no, these are two separate inquiries. And you look at the individual post as the second part of the test, but the page is kind of irrelevant to the first part. And everyone else, as your friend on the other side, Mr. Elson pointed out, was looking at a different inquiry. Well, two things to answer that. First, Mr. Elson did argue in his initial brief at page 36 that he was arguing that Freed had the authority to communicate to the public. And that's exactly, I know your test in the initial opinion was different. It was specific to social media, but that's what they had been arguing this entire time. So the yardstick for him hasn't really changed much. And I agree, when the district court was looking at the social media page, it was more from a broader level, not post by post. And I agree that blocking does require analysis of the entire page. But one thing here is that Mr. Linke wasn't blocked until March 19th of 2020. He only posted through May of 2020. All of these posts have been available to plaintiff. This court's order prior to this hearing was for plaintiff to tell us what post exercising, purporting to exercise such authority. He can't point to any because there aren't any. These were just shares, screenshots, links to newspaper articles. The exact things that Justice Barrett said would not be considered, would not be someone purporting to exercise state action. So I agree that there was some differences and the appearance and function she said would make sense at the second prong of the test to look at that. And those are things we've already looked at this court and the district court, kind of those objective indicia, whether or not government resources were being used on the page, whether or not there was government... Can I ask you, Mr. Ellison mentioned some administrative orders. I'm not going to get the phrase right, but he says were published for the first time on the city manager's page, deciding whether it's personal or official, whatever it is. Is that correct? And were they published otherwise? That's not correct, John. They were published otherwise. And the standard process is for an administrative directive. And sometimes they're not public facing. I mean, sometimes he issues them to his staff and they're, you know, I would imagine use a different color envelope or something like that. It doesn't impact the public, probably doesn't need to go to the press. But those aren't the ones, I assume those aren't the ones he's talking about. No. When it does, then it goes straight to the press for it to be released publicly. And Freed was very clear in his testimony that he never issued anything. There were no original posts. That was his testimony. And at that point, plaintiff had all the time to do any discovery to verify that statement. And he didn't. You can see when you look through the page that even the timestamps on the... He posts a news article. Obviously, it had already been released if he's posting a news article. Some of the administrative directives, they were earlier in the day. He's very clear this happened earlier in the day. So there... Can I ask you, there's one example that's included in Linky's brief. It's a sign about Port Huron being the midway on the seaway. And Freed says that, you know, thinks maybe we should have another sign. He says he's, quote, working on that now. So this is not an official... This is not exactly a repost, I don't think. It's him sort of identifying a city issue and letting constituents know that he's working on the issue. I'd agree with that, that it's not... This is just a photo similar to what he would post, memorialize something that he did earlier in the day, just like this one. But here, what we have to look at... Well, this one... Do you know the specific one I'm referring to? I do, yes. It's the road sign. Yeah. So what was done earlier in the day, that there was an official... The lighting? I mean, that had already occurred. But what we need to look at is whether there was authority based in written law or custom to speak to the general public and register city concerns, as Justice Barrett said, on this topic. There is absolutely no written law we're going to find in the ordinances or the charter that gives him the authority to speak about some random sign in the city. And custom, same thing. There's not going to be a custom and there's no discovery on that issue. So I might agree with you, but your friend on the other side would say, well, we need more discovery to figure this out. And the test has now changed, so that will help refine the discovery. So we should remand, not just... We could just remand for the district court to make a legal call, given the record, although we also could just do that ourselves. But he wants a full remand where, I guess, there's open and unlimited discovery. So what's your response to that? Again, Your Honor, custom has been in Section 1983 since the onset of this litigation and much, much prior. Addicts has been a decision from the Supreme Court since 1973. Plaintiff could have taken that step and could have argued custom, but he chose not to. So is that like a forfeiture point? Essentially. I mean, asking him to remand it now, the Supreme Court's test did not change Section 1983's analysis of custom. So asking for a remand now is essentially just a second bite at the apple to do something... But this is the first time they've applied it in the social media context. And they said you should look at things like past city managers and other things. I mean, how would anyone know that before they did it? I agree with you. The language has been there forever, but lawyers haven't been paying much attention to it when it comes to social media. If you look at all the circuit cases around the nation, no one paid attention to it. I'd agree with that. None of the other cases did. But at the time this case was being litigated, this was a very, very up in the air issue. There was no test. When this court took the case initially, the Sixth Circuit came up with a completely different test than what the District Court applied. So nothing has changed. No one has known what the test was going to be. So we could tell under the actual or apparent authority test, we could look at the page and tell. Whereas here you can't. So why isn't he at least entitled to limited discovery on that? I think I'm misunderstanding your question. In other words, when we were figuring out actual or apparent authority, all the evidence was... No one was arguing the evidence wasn't before us. And I guess you didn't really have an opportunity to. But we could look at the page under our test. Our test was look at the page, figure out if they were either exercising actual authority or apparent. You can look at things like whether they spent resources. You all argued all that because all that was encompassed with, I think it was Judge Goldsmith's 14-factor test. And so it was pretty easy for us to look at the record and determine that. We don't know if past city managers did this and all those things. So I agree it shouldn't be open-ended discovery, but shouldn't it be at least that he would have a chance to show those things? I don't think that's necessary. And most importantly is that even if we assume the first prong of the test, he still has to meet the second prong of the test. And he hasn't done that. He hasn't shown a single post where Freed is purporting to exercise his authority. And I'm just assuming for the sake of argument that putting that aside, that he has some authority to speak about some topic on his Facebook page. He still hasn't. And this court was very direct with their questions. Show us the post. Where's the post where he's purporting to exercise his authority? And he hasn't met his burden. And Justice Barrett was very clear that it is Linkey's burden and he has not met that here. And his posts are very clear. Similarly, the Supreme Court could have said that and they passed the buck. They could have looked at it. They did look at it and said that and didn't. They didn't. And they didn't decide the other case either. I wish they would have, but they didn't. What about the Monell claim? They had a Monell claim. They took discovery on it, presumably. Wouldn't that require getting into sort of the past practice by the city and how the actions that prior city managers had taken to show what sort of training or what authorities the city manager over time historically? Absolutely. And I argued in my brief that the inquiry is a little bit different from Monell to Section 1983, but it's still, you're looking at custom anytime there's a Monell claim. It was litigated. We did have that in our motion for summary judgment initially. So there was clearly an opportunity to take discovery on the custom issue then. Is Monell usually, I'm just curious, I haven't thought this through. I think it's a good point, Judge Riddler brings up. Is Monell, is custom, as you point out, slightly different? Because we're talking about a very specific custom now. In other words, a well-settled practice that city managers had the authority to speak on a particular subject matter. Whereas when you're talking about, at least as I think about Monell typically, you're talking about the custom of the municipality. I haven't thought through, are those the same here? But that's what I'm trying to get at. Maybe you have some thoughts. The only reason that I said it was a little bit different is because in Monell, there are some Sixth Circuit decisions where it was not such a, Justice Barrett was clear that it should be a long-standing practice of past city managers. And this court has found a little bit differently in the Monell context that it can be less than, it could be the current city manager would be able to create a custom. But no, I think the discovery that would need to be taken would be exactly the same on the two claims. However... But are you saying, and this might support your argument, but are you saying that a current city manager cannot... What if a city manager was there 40 years? They could establish a custom or practice, couldn't they? I think that there might be a time where the line has to be drawn. Because yes, if we have the same guy in there for 40 years, it might be different. Here, we have a city manager who had only been there for six at the time of... So we're not going to be in that arena, but I do see how, yes, if you have a long, long-standing city employee, I think that's where the long-standing comes in. I think everyone would agree that 40 years is a long-standing practice at that point. I haven't even been alive for 40 years, so it would make sense to me. So I just think the difference here is those facts aren't going to change. He can't, Justice Barrett was clear that he can't conjure up that authority on his own. There has to be custom, and they can't find that. Let me get back to what Judge Raylard asked you. Let's assume there was no inquiry in the district court before about what the custom was among past city managers in terms of making public pronouncements on matters of concern, and particularly maybe not on social media. Are you claiming there's a forfeiture that they have no right to go back resume discovery? Do you have any authority for that? I think that is the... I didn't argue a waiver argument, but I know the other side did, but I think they have. They have not put forth any evidence. They haven't sought discovery on that where they could have and where it was a relevant inquiry. All right, but they're seeking discovery now because they want Remand to be able to do that. Is there any reason they shouldn't be allowed to do that? I think they already had that opportunity. I think it's not... You keep saying that, but is there any reason they can't do it now under the new test of the Supreme Court? I don't think that part of the test is new, though. There's nothing new about it. Custom wasn't something that the Supreme Court said, and where they did say it's a little bit different is the second prong of the test, where they said the public official or the government employee has to be purporting to exercise that authority. That wasn't in this court's test, and it's not necessary to Remand on that issue because we have all of the discovery and the facts necessary to answer both the custom inquiry and that second prong of the test inquiry already. Can I ask you a separate question? Did he move for declaratory judgment in this case? I can't remember. No, Your Honor. So, I mean, is qualified immunity just going to kill this case anyway? I guess there's a mootness argument that we did argue at that time because Mr. Preid has not reinstated his Facebook page. It's been gone since May of 2020, so we did argue that, but he does have a declaratory judgment claim. He did not file any motions on it. Yes. So, no, qualified immunity will not just kill the case altogether. I hate to go off on this tangent, but is it moot? I'm trying to think of this now. Judge Goldsmith said no, and his reasoning then is that it was capable of repetition, dedevating review, because Preid at that point could put his social media back. I think at the time, this was 2021, his Facebook page unpublished in 2020, so there was only one year of difference. Now it's been over four years at this point. He has no interest in maintaining his Facebook page. I would certainly raise the mootness argument again. He already denied it, so I don't know if he would change his opinion at this point. Unless the court has any other questions. Judge Radler or Judge Gilman? Nothing further. Thank you, counsel, very much for your thoughtful argument. So, two points on final word here. One is, I'd like to address the mootness issue just very, very briefly. It's just to say that Mr. Preid did not shut down his page. He unpublished it, which is the functional equivalent of just suspending it from being publicly accessible. He can simply turn that back on at any point with the click of a few mouse clicks on the keyboard. So, the issue is not moot in that respect. So, I would point this court to let, again, this may be something that the court may need to do in other defenses. But remember, the district court only decided this solely and narrowly on the state action grounds. Why wouldn't it be moot? Because as soon as he turned it back on, if he ever did, you could go get a TRO or preliminary injunction if he was trying to stop you. Because the standard for mootness is the voluntary cessation doctrine. He would have the burden of establishing that. You should explain this to me because I don't have Facebook. I don't understand Facebook in the same way. But if he makes it essentially unpublic, it's a private page, right? It's actually not even accessible to him, actually, as I understand it. Okay. So, it's even different than that. It's even different than that. Yes. So, I don't understand. If he says, I'm not going to use it anymore, if he ever turned it on, couldn't you just walk into district court and get a TRO at that point if he tried to block or remove you? But the point would be is that we're not necessarily challenging. We're challenging the policy effectively on this, not just the individual posts themselves. I know we have to view this through the lens of that now because of the Supreme Court. But if you're challenging the policy, isn't it a Monell claim? I mean, that is a problem with the Supreme Court's opinion for you. It's now individual post related. So, why not as to a policy, it's a Monell claim? And so, this all comes back to what Judge Raebler was asking. Well, and it very well could in that respect. But again, when you talk about a Monell claim, you're talking about a policy of what, right? It's not just a policy. It has to be specific to the issues that we're there about. And I'm going back to where I started from is, and if the court looks back on my filings back in the district court, everything was focused on these, if you want to call it state action or Monell, it was on the appearance and function test, not the duty or I call the duty and authority test, right? And I think this court has hinted that's what they're calling it as well. But that was your choice. That was your choice. That's how you chose to frame the case. Because, but I can't, I mean, I don't think I can be faulted for not being the soothsayer to know exactly that the test would change as to the way the U.S. Supreme Court has said. In fact, it's not my, just my viewpoint. This is the new test. I cited to a Kentucky district court decision that says this is a new test. So I guess the point I guess I'm getting at with this would be is that there are other defenses. There are other issues that need to be sussed out. The key issue right now is what is the appropriate test? What is the appropriate? Now that we know that we should be able to be given the chance to meet it. Any other questions? Judge Rayler, Judge Gilman? Nothing further. No. Mr. Allison, thank you very much for your thoughtful and helpful argument and the case will be submitted.